UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE REYES,<br><br>           Plaintiff,<br><br>      vs.<br><br>VALLEY STATE PRISON, et al.,<br><br>           Defendants. | 1:20-cv-00023-DAD-GSA-PC<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE PROCEED AGAINST DEFENDANTS FISHER, PAEZ, ANGUIANO, CHAPAS, LUCERO, MARQUEZ, CRUZ, AND MOOSEBAUR FOR VIOLATION OF RLUIPA, VIOLATION OF FIRST AMENDMENT FREE EXERCISE CLAUSE, AND ADVERSE CONDITIONS OF CONFINEMENT; AGAINST DEFENDANTS FISHER AND MOOSEBAUR FOR FAILURE TO PROTECT PLAINTIFF FROM CONTAMINATED FOODS; AND AGAINST DEFENDANT MOOSEBAUR FOR RETALIATION; AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED**<br><br>**FOURTEEN-DAY DEADLINE TO FILE OBJECTIONS** |

**I.      BACKGROUND**

   Plaintiff Jose Reyes is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  On December 26, 2019, fifteen plaintiffs, including Plaintiff Jose Reyes, filed the Complaint commencing this action against Valley State Prison, et al., for subjecting them to adverse conditions of confinement in violation of the Eighth Amendment by serving substandard food in Kosher meals at VSP. (ECF No. 2.)

On January 7, 2020, the court issued an order severing the fifteen plaintiffs' claims and opening new cases for individual plaintiffs. (ECF No. 1.) Each of the fifteen plaintiffs was ordered to file an amended complaint in his own individual case within thirty days. (Id.) On February 6, 2020, Plaintiff filed a First Amended Complaint. (ECF No. 5.)

On March 25. 2021, the court screened the First Amended Complaint and issued an order for Plaintiff to either (1) proceed with the cognizable claims found by the court, or (2) file a Second Amended Complaint. (ECF No. 11.) On May 21, 2021, Plaintiff filed the Second Amended Complaint. (ECF No. 14.) On May 25, 2021, the court issued an order striking the Second Amended Complaint for lack of signature. (ECF No. 15.)

On June 14, 2021, Plaintiff filed the Third Amended Complaint, which is now before the court for screening. (ECF No. 16.) 28 U.S.C. § 1915.

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

### III.  SUMMARY OF THIRD AMENDED COMPLAINT

Plaintiff is currently incarcerated at Valley State Prison in Chowchilla, California, in the custody of the California Department of Corrections and Rehabilitation, where the events at issue in the Third Amended Complaint allegedly took place. Plaintiff names as defendants Raythel Fisher, Jr. (Warden, VSP), Paez (Prison Guard), Anguiano (Culinary Staff), Chapas (Culinary Staff), Lucero (Culinary Staff), Marquez (Culinary Staff), Cruz (Culinary Staff), and Moosebaur (Culinary Staff) (collectively, "Defendants").

A summary of Plaintiff's allegations follow:

1. Plaintiff must be served a Kosher diet, for religious reasons, and is completely dependent on Defendants for his daily sustenance. Attached to the Third Amended Complaint, marked as Exhibit "A", is a copy of Operational Procedure 10048, which details the proper procedures for storing, procuring, and serving Kosher meals to inmates who require Kosher meals. Defendants failed to adhere to the proper procedures for Plaintiff from approximately January 8, 2019, until the present time.

2. As a result of the acts and omissions of the Defendants, Plaintiff was subjected to adverse conditions of confinement and failure to protect him from harm, in violation of the Eighth Amendment, RLUIPA, First Amendment free exercise clause, and retaliation in violation of the First Amendment.

3. From January 8, 2019 until the present date, the Kosher meals contained food that was rotten, spoiled, and otherwise unfit for human consumption. The meat portion of those meals are regularly served with half-cooked meat products.

4. The Shabbat dinner is served with spoiled meat. The meat is supposed to be vacuum sealed but is served to Plaintiff open and with mold growing on it. When eaten, the meat caused Plaintiff to become ill and vomit.

5. The turkey served in lunches is unfit for human consumption. It has been denatured by ground-up bone. The sharp and relatively large bone shards caused damage to Plaintiff's teeth and lacerations in Plaintiff's mouth and throat.

6. The Kosher meal stock is delivered in a manner that causes the frozen food to spoil. It is taken from the refrigerated delivery truck and left unrefrigerated in the open sun and out in the elements in the docking area for entire shifts. Defendants fail to inventory the meals upon arrival, so the meals thaw until they are finally inventoried (approximately 10 hours later) and re-frozen. The meals are then transported to the individual prison facility kitchens where they are again allowed to thaw before being refrigerated again and served to plaintiff on the following day.

7. The internal components of the meals are open, spoiled, and otherwise contaminated; items such as applesauce, cream cheese, and fruit cups. Plaintiff complained to Defendants, to no avail.

8. Items in the Kosher meals are constantly stolen by inmate staff. When Plaintiff complained to Defendants about missing food items, Plaintiff was told, "Too bad." What was worse, Defendants revealed Plaintiff's complaints to the inmate kitchen workers in such a way that Plaintiff was labelled a "snitch" in the eyes of Plaintiff's peers, creating a highly volatile and dangerous condition of confinement.

9. As a result of Defendants' actions, the inmate workers intentionally wear their serving gloves to the restroom and touch their private parts with their serving gloves on only to return to the serving line and brag about their activities as they serve Plaintiff his Kosher meal. Kosher meals are often heated in non-Kosher food ovens rendering them religiously contaminated. When the sole Jewish worker objected to this practice, defendant Moosebaur told him to "get in the oven." Defendant Moosebaur openly stated that his grandfather was a German SS officer and that he [Moosebaur] wished that all the Jews had been killed in the Holocaust.

10. The culinary workers are not trained in the procedures mandated by the California Retail Food Code, nor by a Rabbi (necessary to serve Kosher food). The issue of training has

been complained about by Plaintiff and other Jewish inmates, to no avail. Both Defendant Fisher and the Culinary Staff refused to address the problems.

11. On fasting days, Plaintiff is given his breakfast, lunch, and dinner at the same time to be saved until the conclusion of the fast. Defendants instruct Plaintiff to eat all of the meals within a specific time thereby preventing Plaintiff from observing fasting holidays.

12. Plaintiff has submitted numerous inmate grievances on the issues complained of here: Log# VSP-B-19-01146, VSP-19-1285, TLR: 1908537, and others, to no avail. Defendants have been providing Plaintiff Kosher meals that contain open, rotten, spoiled, uncooked, frozen, spilled, non-nutritious food during all times relevant to this complaint. Defendants blame the Vendor (ABC Ventures) for the nutritional problems complained of, yet they have continuously ordered from this vendor for 8 years.

13. Plaintiff is an inmate confined at Valley State Prison in Chowchilla, California. Defendants are employed at said prison and are responsible for the acts and omissions listed in this complaint. Plaintiff participates in the Kosher Diet Program due to his sincerely held religious beliefs. Plaintiff is a Reformed Jewish individual. Plaintiff believes that the law of the Bible is an instruction manual from his Father and Creator and that he has no choice but to adhere to the specific instructions given by his loving Father. The teachings have been passed down from generation to generation starting with Moses (Moshe). The problems faced by Plaintiff have been caused, in part or completely, by Defendants and each of them every day, and are accounted for from January 8, 2019 to December 20, 2019 (when the complaint was filed) until the present time. Rabbi P. Gordon was made aware of the problems and agreed to investigate, but Defendants have continued their unjustified actions. Attached to this [Third] Amended Complaint, marked as Exhibit "B," is the sworn affidavit of Jose Reyes, which documents the dangerous conditions complained of herein.

As relief, Plaintiff requests monetary damages, including punitive damages, declaratory relief, and injunctive relief.

///

///

## IV. PLAINTIFF'S CLAIMS

### A. 42 U.S.C. § 1083

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)); "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

**B.     RLUIPA**

Prisoners' religious freedoms are protected by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. Section 3 of RLUIPA provides: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 [which includes state prisons, state psychiatric hospitals, and local jails], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). For a RLUIPA claim, the plaintiff-prisoner must show that the government has imposed a substantial burden on his religious exercise. A "'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise.'" San Jose Christian College v. Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004).

Money damages are not available under RLUIPA against the state or state officials sued in their official capacities, Sossamon v. Texas, 563 U.S. 277, 279, 131 S.Ct. 1651, 1655 (2011), and RLUIPA does not contemplate liability of government employees in their individual capacity. Wood v. Yordy, 753 F.3d 899, 904 (9th Cir. 2014). Thus, a RLUIPA claim may proceed only for declaratory or injunctive relief against defendants acting within their official capacities.

Plaintiff alleges that the Culinary Staff (defendants Anguiano, Chapas, Lucero, Marquez, Cruz, and Moosebaur), and Defendant Paez (dining hall officer), knowingly provided him with spoiled and non-Kosher foods, refused to replace meals that could not be eaten, replaced foods in Kosher meals with non-Kosher foods, contaminated Kosher foods with dirty gloves, refused to correct subordinates, and allowed for theft from Kosher meals.

The court finds that Plaintiff has stated cognizable RLUIPA claims against Warden Raythel Fisher, Jr., Dining Hall Officer Paez, and Culinary Staff Members Anguiano, Chapas, Lucero, Marquez, Cruz, and Moosebaur, in their official capacities, for knowingly providing spoiled and non-Kosher foods, refusing to replace meals that cannot be eaten, contaminating

Kosher foods with dirty gloves, refusing to correct actions of subordinates, and allowing for theft of items from Kosher meals.

### C. First Amendment Right to Free Exercise of Religion

A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of his/her religion. Vaughn v. Wegman, No. 115CV01902LJOJLTPC, 2019 WL 426142, at *4 (E.D. Cal. Feb. 4, 2019), report and recommendation adopted, No. 115CV01902LJOJLTPC, 2019 WL 10302261 (E.D. Cal. Mar. 12, 2019), aff'd, 804 F. App'x 796 (9th Cir. 2020) (citing Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015) citing Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir. 1987), aff'd sub nom. Hernandez v. C.I.R., 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989)). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. (citing Ohno v. Yasuma, 723 F.3d 984, 1011 (9th Cir. 2013) (quoting Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter, 456 F.3d 978, 988 (9th Cir. 2006) (internal quotation marks and alterations omitted)).

However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Id. (quoting Price v. Johnston, 334 U.S. 266, 285 (1948)). "To ensure that courts afford appropriate deference to prison officials, . . prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987). A prison regulation may therefore impinge upon an inmate's right to exercise his religion if the regulation is "reasonably related to legitimate penological interests." Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (citations omitted). Thus, prisons may lawfully restrict religious activities for security purposes and other legitimate penological reasons. Turner v. Safley, 482 U.S. 78, 89–90 (1987); Pierce v. County of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008). Furthermore, the Supreme Court has held that generally-applicable

laws that incidentally burden a particular religion's practices do not violate the First Amendment. Employment Div. v. Smith, 494 U.S. 872, 878 (1990).

*De minimis* or minor burdens on the free exercise of religion are not of a constitutional dimension, even if the belief upon which the exercise is based is sincerely held and rooted in religious belief. See e.g., Rapier v. Harris, 172 F.3d 999, 1006 n. 4 (7th Cir. 1999) (the unavailability of a non-pork tray for inmate at 3 meals out of 810 does not constitute more than a *de minimis* burden on inmate's free exercise of religion).

Plaintiff alleges that the actions of Defendants prevented him from eating nutritious Kosher meals on a daily basis for an extended number of months. When Plaintiff complained to Defendants, making them aware of the fact that interference with Plaintiff's Kosher diet was preventing him from practicing his religious beliefs, Defendants persisted in their acts and omissions.

The court finds that Plaintiff has stated cognizable First Amendment Free Exercise claims against Warden Raythel Fisher, Jr., Dining Hall Officer Paez, and Culinary Staff Members Anguiano, Chapas, Lucero, Marquez, Cruz, and Moosebaur, in their individual capacities.

**D.     Adverse Conditions of Confinement – Eighth Amendment**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted). A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The circumstances,

nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Id. at 731.

The state is obligated to provide "'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it,'" and "the state health code, while not establishing 'constitutional minima,' is relevant in making a finding regarding the constitutionality of existing conditions." Jackson v. Walker, 2009 WL 1743639, at *8 (E.D. Cal. 2009) (citing Somers v. Thurman, 109 F.3d 614, 623 (9th Cir. 1997)); also see Foster v. Runnels, 554 F.3d 807, 812-813 (9th Cir. 2009); Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986) (prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety").

However, the Eighth Amendment does not require that the food provided to Plaintiff be tasty and the court does not read Ninth Circuit precedent to require jail officials to provide food that is optimally nutritious. See LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) ("The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing.")

"The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." Id.. "The occasional presence of a rodent is insufficient to establish the objective component of an Eighth Amendment claim, which requires that a deprivation be sufficiently serious," Jackson, 2009 WL 1743639 at *8. However, "a lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." Anderson v. Cnty. of Kern, 45 F.3d 1310, 1314 (9th Cir. 1995); see also Johnson, 217 F.3d at 731-32; Hoptowit v. Spellman, 753 F.2d 779, 783 (9th Cir. 1985). Plaintiff alleges that when Defendants served him with spoiled, contaminated, or non-Kosher meals that Plaintiff could not eat, Plaintiff was starved on that day, and the days of starvation were multiplied every time Defendants served him with spoiled, contaminated, or non-Kosher foods.

The court finds that Plaintiff states Eighth Amendment conditions of confinement claims against Warden Raythel Fisher, Dining Hall Officer Paez, and Culinary Staff Members Anguiano, Chapas, Lucero, Marquez, Cruz, and Moosebaur.

### E.   Retaliation – First Amendment

"Prisoners have a First Amendment right to file grievances [and lawsuits] against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

Plaintiff alleges that he complained to Defendant Moosebaur when items were missing from the Kosher meals and Moosebaur responded, "Too bad." Plaintiff complained that the inmates serving Kosher meals were not wearing proper gloves and defendant Moosebaur informed those inmates of Plaintiff's complaints. Defendant Moosebaur encouraged the inmate food servers to wear their gloves while urinating and to use those same gloves to serve Plaintiff his kosher meal.

Plaintiff alleges that he filed grievances and defendant Moosebaur took the above adverse actions in retaliation, however Plaintiff has not established a nexus between any of Plaintiff's written grievances and Defendant Moosebaur's conduct. Notwithstanding, the court does find that Plaintiff states a cognizable claim for retaliation against Defendant Moosebaur when Moosebaur allegedly encouraged other inmates to both berate Plaintiff and contaminate the food served to him for Plaintiff complaining to Defendant about the conditions of the Kosher foods being served. Therefore, Plaintiff states a retaliation claim against Defendant Moosebaur.

///

### F. Failure to Protect – Eighth Amendment

#### 1. Unsanitary Food

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan, 465 F.3d at 1045. Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer, 511 U.S. at 832-33 (internal citations and quotations omitted). "Preventing disease and protecting the health of inmates are legitimate penological goals." McClure v. Tucker, 276 Fed. Appx. 574, 575 (9th Cir. 2008). Robles v. Coughlin, 725 F.2d 12, 15 (2nd Cir. 1983) (*per curiam*) (The Eighth Amendment requires prisoners to be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it.").

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." Farmer, 511 U.S. at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently "substantial risk of serious harm" to his future health. Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Id. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson, 45 F.3d at 1313. To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the

///

risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

The court finds that Plaintiff states cognizable claims against Defendants Raythel Fisher, Jr. and Moosebaur for failure to protect him because Defendant Moosebaur purposely served Plaintiff rotten meat and instructed him to eat it while Moosebaur watched, and Defendant Fisher created policies and allowed practices that denied Plaintiff and other inmates on the Kosher Diet Program the ability to eat sanitary food.

### 2. Harm by other Inmates

The Eighth Amendment requires prison officials to protect inmates from violence. Farmer, 511 U.S. at 833; Wilk v. Neven, 956 F.3d 1143, 1147 (9th Cir. 2020). The Ninth Circuit has held that telling inmates that someone is a "snitch" with the intent of having an inmate killed by other inmates could state a claim for a violation of the inmate's right to be protected from violence while in custody. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (upholding a failure to protect claim where Plaintiff "alleged that because he had petitioned prison and government officials for redress of his grievances, [Defendants] had conspired to label him a 'snitch' and thereby subject him to retaliation by inmates"). But liability attaches only if an official is aware that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to address it. See Farmer, 511 U.S. at 834, 837, 844–45, 847; Wilk, 956 F.3d at 1147; Labatad v. Corrs. Corp. of Am., 714 F.3d 1155, 1160 (9th Cir. 2013); see also Cortez v. Skol, 776 F.3d 1046, 1050 (9th Cir. 2015).

Not every injury that a prisoner sustains creates a constitutional violation. Wilk, 956 F.3d at 1147. Put another way, not every injury that a prisoner suffers at the hands of another inmate establishes liability for prison officials who are responsible for prisoners' safety. Id. An inmate bringing a claim under the Eighth Amendment must show a deprivation that is "sufficiently serious." Farmer, 511 U.S. at 834; Lemire v. California Dep't of Corrs. & Rehabilitation, 726 F.3d 1062, 1074–1075. (9th Cir. 2013). "A deprivation is sufficiently serious when the official's act or omission results in the denial of the minimal civilized measure of life's necessities." Id. at 1074 (quoting Foster, 554 F.3d at 812). In the failure to protect context, an inmate must show

that they are incarcerated under conditions posing a substantial risk of serious harm. See Farmer, 511 U.S. at 834; Lemire, 76 F.3d at 1075.

Furthermore, a prison official violates an inmate's Eighth Amendment rights only when that official is "deliberately indifferent." Id. at 834–37; Lemire, 726 F.3d at 1074; Labatad, 714 F.3d at 1160. A prison official must have had a "sufficiently culpable state of mind." Id. at 834. An official must be aware of facts from which they can draw the inference that a substantial risk of serious harm exists and must also draw the inference. Id. at 837; Cortez, 776 F.3d at 1050; Labatad, 714 F.3d at 1160. The question of deliberate indifference focuses on a defendant's actual mental attitude. Farmer, 511 U.S. at 835–39. Deliberate indifference exists if a defendant *subjectively* "knows of and disregards an excessive risk to inmate health and safety." Id. at 837–39; Lemire, 736 F.3d at 1074; Toguchi, 391 F.3d at 1057. An official need not, however. have intended that harm befall an inmate. Id. at 842; Lemire, 726 F.3d at 1074. It is enough that an official acted or failed to act even though the official knew of a substantial risk of serious harm. Id.; Lemire, 726 F.3d at 1074. A factfinder may infer subjective awareness from circumstantial evidence. Id.; Wilk, 956 F.3d at 1147. Too, a factfinder may determine that a "prison official knew of a substantial risk from the very fact that the risk was obvious." Id.

The court finds that Plaintiff fails to state a claim against defendant Moosebaur for placing him in danger of harm from other inmates. Although defendant Moosebaur allegedly insinuated that Plaintiff was a snitch by informing the inmate kitchen workers that Plaintiff had complained about the deficiencies in the Kosher food services, and by encouraged the inmate food servers to wear their gloves while urinating and to use those same gloves to serve Plaintiff his kosher meal, neither of these actions demonstrates that defendant Moosebaur created a substantial risk of serious harm to Plaintiff by other inmates. Thus, Plaintiff fails to state a claim against Defendant Moosebaur, or any other defendant, for failure to protect him from harm by other inmates.

///
///
///

## V. RECOMMENDATIONS AND CONCLUSION

For the reasons set forth above, the court RECOMMENDS that:

1. This action proceed against Defendants Warden Raythel Fisher, Jr., Officer Paez, and Culinary Staff Members Anguiano, Chapas, Lucero, Marquez, Cruz, and Moosebaur for violation of RLUIPA, violation of the First Amendment Free Exercise Clause, and adverse conditions of confinement in violation of the Eighth Amendment;

2. This action also proceed against Defendants Warden Raythel Fisher, Jr., and Moosebaur for failure to protect Plaintiff from harm to his health from the Kosher foods served to him;

3. This action also proceed against Defendant Moosebaur for retaliation in violation of the First Amendment; and

4. All other claims and defendants be dismissed from this action based on Plaintiff's failure to state a claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after the date of service of these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 12, 2021**          **/s/ Gary S. Austin**
                                           UNITED STATES MAGISTRATE JUDGE