UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE REYES, | **1:20-cv-00023-ADA-GSA-PC** |
| Plaintiff, | |
| | **FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS BE GRANTED IN PART, WITH LEAVE TO AMEND** |
| vs. | |
| VALLEY STATE PRISON, et al., | **(ECF No. 24.)** |
| Defendants. | |
| | **OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

I.      **BACKGROUND**

Plaintiff Jose Reyes is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.   On December 26, 2019, fifteen plaintiffs, including Plaintiff Jose Reyes, filed the Complaint commencing this action against Valley State Prison (VSP), et al., for subjecting them to adverse conditions of confinement in violation of the Eighth Amendment by serving substandard food in Kosher meals at VSP. (ECF No. 2.)

On January 7, 2020, the court issued an order severing the fifteen plaintiffs' claims and opening new cases for individual plaintiffs. (ECF No. 1.)  Each of the fifteen plaintiffs was ordered to file an amended complaint in his own case within thirty days.  (Id.)  On February 6, 2020, Plaintiff filed the First Amended Complaint in this case.  (ECF No. 5.)

This case now proceeds with the Third Amended Complaint filed by Plaintiff on June 14, 2021, against defendants Warden Raythel Fisher, Jr., Officer Paez, and Culinary Staff Members Anguiano, Chapas, Lucero, Marquez, Cruz, and Moosbauer[1] ("Defendants") for violation of RLUIPA, violation of the First Amendment Free Exercise Clause, and unconstitutional conditions of confinement in violation of the Eighth Amendment; against defendants Warden Raythel Fisher, Jr. and Culinary Staff Member Moosbauer for alleged failure to protect plaintiff from harm to his health from the Kosher foods served to him in violation of the Eighth Amendment; and against defendant Culinary Staff Member Moosbauer for alleged retaliation in violation of the First Amendment. (ECF No. 16.)[2]

On November 12, 2021, Defendants filed a motion to dismiss this case under Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6). (ECF No. 28.) On December 7, 2021, Plaintiff filed an opposition to the motion. (ECF No. 29.) On December 14, 2021, Defendants filed a reply to the opposition. (ECF No. 30.) Defendants' motion is deemed submitted. Local Rule 230(*l*).

## II.    PLAINTIFF'S ALLEGATIONS

Plaintiff is currently incarcerated at Valley State Prison in Chowchilla, California, in the custody of the California Department of Corrections and Rehabilitation, where the events at issue in the Third Amended Complaint allegedly took place. Plaintiff names as defendants Raythel Fisher, Jr. (Warden, VSP), Paez (Prison Guard), Anguiano (Culinary Staff), Chapas (Culinary Staff), Lucero (Culinary Staff), Marquez (Culinary Staff), Cruz (Culinary Staff), and Moosbauer (Culinary Staff Supervisor) (collectively, "Defendants"). A summary of Plaintiff's allegations follow:

1. Plaintiff must be served a Kosher diet, for religious reasons, and is completely dependent on Defendants for his daily sustenance. Attached to the Third Amended Complaint, marked as Exhibit "A", is a copy of Operational Procedure 10048, which details the proper

---

[1] Sued as Moosebaur.

[2] On August 9, 2021, the Court issued an order dismissing all other claims and defendants from this action. (ECF No. 19.)

procedures for storing, procuring, and serving Kosher meals to inmates who require Kosher meals. Defendants failed to adhere to the proper procedures for Plaintiff from approximately January 8, 2019, until the present time.

2. As a result of the acts and omissions of the Defendants, Plaintiff was subjected to adverse conditions of confinement and failure to protect him from harm, in violation of the Eighth Amendment, RLUIPA, First Amendment free exercise clause, and retaliation in violation of the First Amendment.

3. From January 8, 2019 until the present date, the Kosher meals contained food that was rotten, spoiled, and otherwise unfit for human consumption. The meat portion of those meals are regularly served with half-cooked meat products.

4. The Shabbat dinner is served with spoiled meat. The meat is supposed to be vacuum sealed but is served to Plaintiff open and with mold growing on it. When eaten, the meat caused Plaintiff to become ill and vomit.

5. The turkey served in lunches is unfit for human consumption. It has been denatured by ground-up bone. The sharp and relatively large bone shards caused damage to Plaintiff's teeth and lacerations in Plaintiff's mouth and throat.

6. The Kosher meal stock is delivered in a manner that causes the frozen food to spoil. It is taken from the refrigerated delivery truck and left unrefrigerated in the open sun and out in the elements in the docking area for entire shifts. Defendants fail to inventory the meals upon arrival, so the meals thaw until they are finally inventoried (approximately 10 hours later) and re-frozen. The meals are then transported to the individual prison facility kitchens where they are again allowed to thaw before being refrigerated again and served to plaintiff on the following day.

7. The internal components of the meals are open, spoiled, and otherwise contaminated; items such as applesauce, cream cheese, and fruit cups. Plaintiff complained to Defendants, to no avail.

8. Items in the Kosher meals are constantly stolen by inmate staff. When Plaintiff complained to Defendants about missing food items, Plaintiff was told, "Too bad." What was worse, Defendants revealed Plaintiff's complaints to the inmate kitchen workers in such a way

3

that Plaintiff was labelled a "snitch" in the eyes of Plaintiff's peers, creating a highly volatile and dangerous condition of confinement.

9. As a result of Defendants' actions, the inmate workers intentionally wear their serving gloves to the restroom and touch their private parts with their serving gloves on only to return to the serving line and brag about their activities as they serve Plaintiff his Kosher meal. Kosher meals are often heated in non-Kosher food ovens rendering them religiously contaminated. When the sole Jewish worker objected to this practice, defendant Moosbauer told him to "get in the oven." Defendant Moosbauer openly stated that his grandfather was a German SS officer and that he [Moosbauer] wished that all the Jews had been killed in the Holocaust.

10. The culinary workers are not trained in the procedures mandated by the California Retail Food Code, nor by a Rabbi (necessary to serve Kosher food). The issue of training has been complained about by Plaintiff and other Jewish inmates, to no avail. Both Defendant Fisher and the Culinary Staff refused to address the problems.

11. On fasting days, Plaintiff is given his breakfast, lunch, and dinner at the same time to be saved until the conclusion of the fast. Defendants instruct Plaintiff to eat all of the meals within a specific time thereby preventing Plaintiff from observing fasting holidays.

12. Plaintiff has submitted numerous inmate grievances on the issues complained of here: Log# VSP-B-19-01146, VSP-19-1285, TLR: 1908537, and others, to no avail. Defendants have been providing Plaintiff Kosher meals that contain open, rotten, spoiled, uncooked, frozen, spilled, non-nutritious food during all times relevant to this complaint. Defendants blame the Vendor (ABC Ventures) for the nutritional problems complained of, yet they have continuously ordered from this vendor for 8 years.

13. Plaintiff is an inmate confined at Valley State Prison in Chowchilla, California. Defendants are employed at said prison and are responsible for the acts and omissions listed in this complaint. Plaintiff participates in the Kosher Diet Program due to his sincerely held religious beliefs. Plaintiff is a Reformed Jewish individual. Plaintiff believes that the law of the Bible is an instruction manual from his Father and Creator and that he has no choice but to adhere to the specific instructions given by his loving Father. The teachings have been passed down

from generation to generation starting with Moses (Moshe). The problems faced by Plaintiff have been caused, in part or completely, by Defendants and each of them every day, and are accounted for from January 8, 2019 to December 20, 2019 (when the complaint was filed) until the present time. Rabbi P. Gordon was made aware of the problems and agreed to investigate, but Defendants have continued their unjustified actions. Attached to this [Third] Amended Complaint, marked as Exhibit "B," is the sworn affidavit of Jose Reyes, which documents the dangerous conditions complained of herein.

As relief, Plaintiff requests monetary damages, including punitive damages, declaratory relief, and injunctive relief.

## III.     PLAINTIFF'S CLAIMS – LEGAL STANDARDS

### A.     RLUIPA

Prisoners' religious freedoms are protected by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. Section 3 of RLUIPA provides: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 [which includes state prisons, state psychiatric hospitals, and local jails], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). For a RLUIPA claim, the plaintiff-prisoner must show that the government has imposed a substantial burden on his religious exercise. A "'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise.'" San Jose Christian College v. Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004).

Money damages are not available under RLUIPA against the state or state officials sued in their official capacities, Sossamon v. Texas, 563 U.S. 277, 279, 131 S.Ct. 1651, 1655 (2011), and RLUIPA does not contemplate liability of government employees in their individual capacity.  Wood v. Yordy, 753 F.3d 899, 904 (9th Cir. 2014). Thus, a RLUIPA claim may

///

proceed only for declaratory or injunctive relief against defendants acting within their official capacities.

### B.    42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)); "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp.,

///

6

637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### 1.      First Amendment Right to Free Exercise of Religion

A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of his/her religion. Vaughn v. Wegman, No. 115CV01902LJOJLTPC, 2019 WL 426142, at *4 (E.D. Cal. Feb. 4, 2019), report and recommendation adopted, No. 115CV01902LJOJLTPC, 2019 WL 10302261 (E.D. Cal. Mar. 12, 2019), aff'd, 804 F. App'x 796 (9th Cir. 2020) (citing Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015) citing Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir. 1987), aff'd sub nom. Hernandez v. C.I.R., 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989)). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. (citing Ohno v. Yasuma, 723 F.3d 984, 1011 (9th Cir. 2013) (quoting Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter, 456 F.3d 978, 988 (9th Cir. 2006) (internal quotation marks and alterations omitted)).

However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Id. (quoting Price v. Johnston, 334 U.S. 266, 285 (1948)). "To ensure that courts afford appropriate deference to prison officials, . . prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987). A prison regulation may therefore impinge upon an inmate's right to exercise his religion if the regulation is "reasonably related to legitimate penological interests." Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (citations omitted). Thus, prisons may lawfully restrict religious activities for security purposes and other legitimate penological reasons. Turner v. Safley, 482 U.S. 78, 89–90 (1987); Pierce v. County of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008). Furthermore, the Supreme Court has held that generally-applicable ///

laws that incidentally burden a particular religion's practices do not violate the First Amendment. Employment Div. v. Smith, 494 U.S. 872, 878 (1990).

*De minimis* or minor burdens on the free exercise of religion are not of a constitutional dimension, even if the belief upon which the exercise is based is sincerely held and rooted in religious belief. See e.g., Rapier v. Harris, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (the unavailability of a non-pork tray for inmate at 3 meals out of 810 does not constitute more than a de minimis burden on inmate's free exercise of religion).

## 2.   Adverse Conditions of Confinement – Eighth Amendment

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted). A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Id. at 731.

The state is obligated to provide "'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it,'" and "the state health code, while not establishing 'constitutional minima,' is relevant in making a finding regarding the constitutionality of existing conditions."

Jackson v. Walker, 2009 WL 1743639, at *8 (E.D. Cal. 2009) (citing Somers v. Thurman, 109 F.3d 614, 623 (9th Cir. 1997)); also see Foster v. Runnels, 554 F.3d 807, 812-813 (9th Cir. 2009); Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986) (prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety").

However, the Eighth Amendment does not require that the food provided to Plaintiff be tasty and the court does not read Ninth Circuit precedent to require jail officials to provide food that is optimally nutritious. See LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) ("The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing.")

"The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." Id. "The occasional presence of a rodent is insufficient to establish the objective component of an Eighth Amendment claim, which requires that a deprivation be sufficiently serious," Jackson, 2009 WL 1743639 at *8. However, "a lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." Anderson v. Cnty. of Kern, 45 F.3d 1310, 1314 (9th Cir. 1995); see also Johnson, 217 F.3d at 731-32; Hoptowit v. Spellman, 753 F.2d 779, 783 (9th Cir. 1985).

### 3.   Failure to Protect from Unsanitary Food – Eighth Amendment

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan, 465 F.3d at 1045. Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer, 511 U.S. at 832-33 (internal citations and quotations omitted). "Preventing disease and protecting the health of inmates are legitimate penological goals." McClure v. Tucker, 276 Fed. Appx. 574, 575 (9th Cir. 2008). Robles v. Coughlin, 725 F.2d 12, 15 (2nd Cir. 1983) (per curiam) (The Eighth Amendment requires prisoners to be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it.").

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." Farmer, 511 U.S. at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently "substantial risk of serious harm" to his future health. Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Id. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson, 45 F.3d at 1313. To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

### 4.   **Retaliation – First Amendment**

"Prisoners have a First Amendment right to file grievances [and lawsuits] against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

## IV.    MOTION TO DISMISS UNDER RULES 12(b)(6) AND 8(a)(2)

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007).  The court must also construe the alleged facts in the light most favorable to the plaintiff.  <u>See</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); <u>see also</u> <u>Hosp. Bldg. Co. v. Rex Hosp. Trustees</u>, 425 U.S. 738, 740, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976); <u>Barnett v. Centoni</u>, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  <u>See</u> <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421, 89 S. Ct. 1843, 23 L. Ed. 2d 404 (1969).  In addition, *pro se* pleadings are held to a less stringent standard than those drafted by lawyers.  <u>See</u> <u>Haines v. Kerner, 404 U.S. 519</u>, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atl. Corp v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." <u>Id.</u> at 555-56.  The complaint must contain "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see id.; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Failure to exhaust should usually be raised in a summary judgment motion, but "in those rare cases where a failure to exhaust is clear from the face of the complaint, a defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim." Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## IV.    DEFENDANTS' MOTION TO DISMISS

Defendants bring this motion to dismiss under Federal Rule of Civil Procedure 8(a)(2) and 12(b)(6) on the grounds that: (1) the Third Amended Complaint (TAC) fails to allege sufficient facts to state a claim against any Defendant under 42 U.S.C. § 1983 or the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); (2) the TAC asserts claims for injunctive relief under RLUIPA but fails to establish that any Defendant is in a position to provide any relief that the Court could order; and, (3) asserts a claim for retaliation under the First Amendment against Defendant Moosbauer that fails as a matter of law.

///

A.    **The Third Amended Complaint is Subject to Dismissal Notwithstanding Screening by the Court**

Defendants first argue that this motion to dismiss is warranted notwithstanding the Court already having screened the Third Amended Complaint because the Judges in the Eastern District of California have held that Defendants have a procedural right to bring such a motion.

B.    **Plaintiff Fails to State any Claim Against Defendants Anguiano, Chapas, Lucero, Marquez, or Cruz**

1.    **Plaintiff Fails to Allege Facts Supporting a Cause of Action Against Any of These Defendants**

Defendants argue that all of Plaintiff's claims against defendants Anguiano, Chapas, Lucero, Marquez, and Cruz, for burden on Plaintiff's religion under RLUIPA, the First Amendment, and for adverse conditions of confinement in violation of the Eighth Amendment, fail because Plaintiff fails to allege particular facts supporting a cause of action against them. These five defendants are all culinary workers, and in the TAC, Plaintiff refers to them collectively as "culinary workers" or "culinary staff" without distinction, or refers to them with all Defendants collectively.   Such reference fails to establish that any of these individual Defendants was in a position to prevent a constitutional violation.

Defendants assert that defendants Anguiano and Moosbauer are the only two culinary workers whose individual conduct was alleged in the TAC.[3]  In Plaintiff's declaration, Plaintiff alleges that he told defendant Anguiano that an inmate kitchen worker (Anderson) was bragging about defiling kosher meals and making other offensive comments, and Anguiano complied with Plaintiff's request to have that inmate worker removed from the serving line.  (TAC Exh. B, ECF No. 16 at 27-28.)  Plaintiff alleges that the inmate worker still works in the kitchen, but Plaintiff does not allege facts suggesting that defendant Anguiano is able to do more than he did, or even that Defendant Anguiano is aware of any continuing issues.

---

[3] Plaintiff addresses Defendant Moosbauer's allegations below.

2.      **The Third Amended Complaint Fails to Establish That These Defendants are Appropriate Subjects of a RLUIPA Claim**

Defendants also argue that Plaintiff has not established that defendants Anguiano, Chapa, Lucero, Marquez, or Cruz are appropriate subjects of a RLUIPA claim because RLUIPA claims may only proceed for injunctive relief against defendants in their official capacity, and none of the culinary worker defendants has the authority or capacity to appropriately respond to a court order on injunctive relief, or fix the alleged issues with the Kosher meals at VSP.  Plaintiff has not provided any explanation of their specific positions or responsibilities, or any basis for concluding that they could fix the alleged issues.

C.      **Plaintiff Fails to State any Claim Against Defendant Moosbauer**

1.      **Plaintiff Fails to Allege Facts Supporting a Free Exercise or Food Safety Claim Against Defendant Moosbauer**

Defendants argue that Plaintiff fails to allege facts supporting a free exercise of religion or food safety claim against Defendant Moosbauer because the TAC fails to allege particular facts establishing his liability for any constitutional deprivation.

Defendant Moosbauer's specific conduct is described in three parts of the TAC.  First, Plaintiff complained to defendant Moosbauer about missing food items, but Moosbauer simply stated, "Too bad" and revealed his complaints to kitchen workers.  (TAC at 7, 12, 14.) Defendants argue that these allegations fail to support a food-safety-related claim as there was no indication that this happened so often, or that so much food was missing, that Plaintiff's health was at risk.  Defendants also argue that these allegations have no apparent connection to Plaintiff's religion-based claims and fail to establish that a few missing items substantially burdened Plaintiff's practice of religion.

Second, in another passage, Moosbauer interacts with an inmate kitchen worker who complained to Moosbauer about the use of non-Kosher ovens.  (TAC at 7.)  Defendants argue that these allegations fail to show that Moosbauer intentionally acted to burden Plaintiff's own practice of religion, or that he knew about or participated in any claimed constitutional violations.

///

14

Finally, Plaintiff alleges in the TAC that defendant Moosbauer acted "with deliberation" when he served Plaintiff with rotten meat and instructed him to eat it while Moosbauer watched. Defendants argue that there is no factual basis for the legal conclusion that Defendant Moosbauer acted "with deliberation," and the TAC does not make clear that Moosbauer knew the food was rancid, and the provision of bad food on one occasion is insufficient to state a claim.

2. **The Third Amended Complaint Fails to Establish That Defendant Moosbauer is an Appropriate Subject of a RLUIPA Claim**

For largely the same reasons as already discussed for defendants Anguiano, Chapa, Lucero, Marquez, and Cruz, Defendants argue that the TAC fails to establish that defendant Moosbauer is an appropriate subject of a RLUIPA claim because RLUIPA claims may only proceed for injunctive relief against defendants in their official capacity, and defendant Moosbauer does not have the authority or capacity to fix the alleged issues with the Kosher meals at VSP.

3. **Plaintiff's Informal Complaints are not a Protected Activity Supporting a Retaliation Claim**

Under his fourth cause of action, for retaliation, Plaintiff alleges that he "complained to defendant Moosbauer that items were missing from the Kosher meals . . . and his original response to Plaintiff was 'Too bad . . .' Plaintiff also complained that the inmates serving the Kosher meals were not wearing proper gloves, and defendant Moosbauer's response was to inform those inmates of the plaintiff's complaint[] . . . [and to] encourage[] the prisoners (Food servers) to wear their gloves while urinating and to use those same "dirty dick" gloves to serve the plaintiff his Kosher meal." (TAC at 12.) The portion of Plaintiff's retaliation claim remaining is premised on Defendant Moosbauer's alleged encouragement to other inmates to contaminate Plaintiff's food and to berate Plaintiff after Plaintiff complained to him about the Kosher foods being served. (ECF No. 17 at 12.)

Defendants argue that Plaintiff's informal complaints to Defendant Moosbauer do not qualify as a protected activity under the First Amendment, citing see, e.g., Johnson v. Carroll, No. 2:08-CV-1494 KJN P, 2012 WL 2069561, at *33 (E.D. Cal. June 7, 2012), report and

recommendation adopted, 2012 WL 3756483 (E.D. Cal. Aug. 28, 2012) ("The consensus of the cases that have considered the issue appears to be that an inmate's verbal challenges or rantings to correctional staff are not within the ambit of First Amendment protection." (collecting cases)).

### 4. **Plaintiff Fails to State any Claim Against Defendant Paez**

Defendants argue that there are no allegations of any interaction with Plaintiff by Defendant Paez concerning his Kosher meals, any involvement in the preparation or service of the food, or factual basis for any connection between a "dining hall officer" (TAC at 9, 10, 11) and Plaintiff's Kosher meals.  Defendants also argue that Defendant Paez also is an improper defendant for a RLUIPA claim for the same reasons as Defendants Anguiano, Chapa, Lucero, Marquez, and Cruz: the TAC fails to establish that Defendant Paez could effectively implement any injunctive relief that the Court may order.

### 5. **Plaintiff Fails to State any Claim Against Defendant Fisher**

Defendants argue that Defendant Fisher's position as warden is insufficient to hold him liable for the constitutional violations that Plaintiff alleges, citing Uhuru v. Moskowitz, No. CV07-07109JVSVBK, 2009 WL 2020758, at *13 (C.D. Cal. July 6, 2009) ("While Plaintiff asserts that Defendant Marshall is personally responsible for the religious programs by virtue of his role as prison warden, this is not sufficient to state a claim against him.")

Defendants also argue that the mere submission of grievances complaining about an issue are insufficient to establish a defendant's knowledge, citing see Mitchell v. Cate, No. 1:11-CV-01250 JLT PC, 2012 WL 1158760, at *2-4 (E.D. Cal. Apr. 6, 2012) (RLUIPA and First Amendment claims against warden failed despite submission of grievances because "it is well-established that inmates lack a separate constitutional entitlement to a specific prison grievance procedure.

Defendants assert that there are no allegations of any direct conversations between Defendant Fisher and Plaintiff, and no other specific factual allegations demonstrating Defendant Fisher's knowledge of any issues with the Kosher meals at VSP, citing see Sims v. Wegman, No. 1:11CV0931 DLB PC, 2011 WL 6367750, at *2 (E.D. Cal. Dec. 19, 2011) (holding that the plaintiff failed to state a claim against the defendant-warden because the plaintiff "alleges no

facts to demonstrate that [the warden] personally deprived Plaintiff of his constitutional rights, knew of constitutional violations and failed to act, or promulgated a policy that violated Plaintiff's constitutional rights").

Defendants also contend that the TAC's RLUIPA claim should be dismissed with respect to Defendant Fisher to the extent that it is brought against him in his individual capacity, and because the TAC fails to establish Defendant Fisher's connection to any constitutional violation and fails to establish that Defendant Fisher is an appropriate defendant for an official-capacity RLUIPA claim for injunctive relief. Defendants cite see Mitchell, 2012 WL 1158760, at *2-4; see also, e.g., Saddiq v. Trinity Servs. Grp., No. CV131671PHXROSMHB, 2015 WL 13684700, at *12 (D. Ariz. Jan. 15, 2015) (dismissing RLUIPA claim based on prison policy because the plaintiff failed to allege facts connecting deputy warden to challenged policy or its enforcement).

Defendants argue that Defendant Fisher is not liable as a supervisor for actions of subordinates on any theory of vicarious liability, and Plaintiff's mere submissions of prison grievances complaining about an issue are insufficient to establish a defendant's knowledge.

In response to Plaintiff's submission with the TAC of a VSP Operational Procedure (O.P.) apparently approved by Defendant Fisher, Defendants argue that Plaintiff has not alleged that the O.P. itself is constitutionally deficient, only that it is not being adequately followed by VSP Culinary Staff, and without those allegations, the O.P. provides no basis for holding Defendant Fisher liable for the constitutional harms that Plaintiff alleges. And, because the TAC fails to connect Defendant Fisher to any constitutional violation, it also fails to establish that Defendant Fisher is an appropriate defendant for an official-capacity RLUIPA claim for injunctive relief.

## V.   DISCUSSION

Plaintiff bases his opposition to Defendants' motion to dismiss on the fact that the Court screened the TAC and found sufficient facts to proceed against the Defendants. He argues that the TAC is sufficiently pleaded to put Defendants on notice of the conduct complained of and the injuries suffered by Plaintiff.

///

///

In response, Defendants correctly argue that Plaintiff cannot rely solely on the Court's screening as a basis for overcoming the motion to dismiss, as another Court in this district explained:

> Plaintiff misconstrues the nature of the preliminary screening called for by 28 U.S.C. § 1915A. A court's determination, upon screening, that a complaint may state cognizable claims does not preclude a defendant from subsequently bringing a motion to dismiss one or more of those claims under Federal Rule of Civil Procedure 12(b)(6). . . . Plaintiff cannot rely solely on the court's screening as a basis for overcoming a Rule 12(b)(6) motion.

Barker v. California Dep't of Corr. & Rehab., No. 2:13-CV-1793 KJN P, 2015 WL 3913546, at *4 (E.D. Cal. June 25, 2015), report and recommendation adopted, 2015 WL 5474307 (E.D. Cal. Sept. 16, 2015). Defendants' argument thus has merit.

**A.** **Defendants' right to bring this motion to dismiss**

Defendants first establish that they have a procedural right to bring a motion to dismiss challenging the findings in the Court's screening order. Defendants cite Birrell v. Banzhaf, No. 2:14-CV-01024 JAM DB, 2017 WL 840654, at *5 (E.D. Cal. Mar. 3, 2017), in which this Court found that "[J]udges in the Eastern District of California have repeatedly held that the screening and dismissal procedure under 28 U.S.C. § 1915A is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring." Plaintiff argues that the findings and recommendations issued by the Magistrate Judge clearly found that Plaintiff's Third Amended Complaint contains sufficient facts to proceed with this case against the defendants.

The Court agrees with Defendants that they have the right to bring a motion challenging the findings in the Court's initial screening order.

**B.** **Personal Participation – Defendants Anguiano,  Chapas, Lucero, Marquez, Cruz, Paez**

**Defendants' arguments**:

Essentially, the Defendants argue that Plaintiff fails to state any claims against the above named defendants because Plaintiff has not alleged sufficient facts in the TAC against them. This

18

argument has merit.[4]  Under § 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights.  <u>Jones</u>, 297 F.3d at 934 (emphasis added).  Plaintiff must demonstrate that each of the defendants, through their own individual actions, violated Plaintiff's constitutional rights.  <u>Iqbal</u>, 556 U.S. at 676-77.

Defendants argue, and the court agrees, that in the TAC Plaintiff fails to allege facts showing that defendants Chapas, Lucero, Marquez, Cruz, who are all culinary workers at the prison, personally acted against him.  Plaintiff refers to these four defendants collectively as "culinary workers" or "culinary staff" without distinction, or refers to them with all Defendants collectively.  Plaintiff cannot state a claim against any of the Defendants unless he demonstrates in his allegations how **each** of them individually, identified by **name**, **personally** acted or failed to act, violating Plaintiff's rights.  Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights.  <u>Leer v. Murphy</u>, 844 F.2d 628, 634 (9th Cir. 1988); <u>see</u> <u>also</u> <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff also fails to allege facts showing that defendant Paez, a dining hall officer, personally acted against Plaintiff violating Plaintiff's rights.  Plaintiff brings no allegations of any interaction by defendant Paez with Plaintiff concerning his kosher meals, or any involvement in the preparation or service of the food. As asserted by Defendants, there is no factual basis in the TAC for any connection between a "dining hall officer" and Plaintiff's kosher meals.

Again, Plaintiff must allege personal acts by each defendant, showing how each individual defendant violated Plaintiff's rights by their separate personal conduct.   Plaintiff has not done so and therefore fails to state any claims against defendants Chapas, Lucero, Marquez, Cruz, or Paez.  Therefore, the Court shall recommend that these five defendants be dismissed from the TAC, with leave to file a Fourth Amended Complaint addressing these issues identified by the Court.  Defendant Anguiano will be addressed separately below.

///

---

[4]  The Court shall address defendant Anguiano individually.

**Plaintiff's Response**:

In response to Defendants' argument, Plaintiff states that he rests on the facts stated in the Third Amended Complaint.

Plaintiff brings claims against defendants Anguiano, Chapas, Lucero, Marquez, Cruz and Paez for violation of RLUIPA, violation of Plaintiff's rights to free exercise of religion under the First Amendment, and unconstitutional conditions of confinement under the Eighth Amendment. Four of these five named Defendants were all members of the Culinary Staff at Valley State Prison at the time of the events at issue in the Third Amended Complaint—Paez was a dining hall officer. Plaintiff alleges that these defendants were responsible for providing Plaintiff with fresh and wholesome Kosher meals on a daily basis, and that they failed to carry out those responsibilities. Plaintiff alleges that he has been served spoiled meat; turkey containing bone shards; food purposely contaminated with workers' bodily fluids; Kosher meals containing open, rotten, spoiled, uncooked, and non-nutritious foods; and Kosher foods handled in a manner that contaminates them religiously.

**Court's conclusion**:

As correctly argued by Defendants, Plaintiff has not alleged facts supporting a cause of action against any of these five defendants (Chapas, Lucero, Marquez, Cruz and Officer Paez). Moreover, to bring a claim against an individual defendant a plaintiff must **name** the individual defendant and explain how the named defendant **personally** acted against him, using **facts** to show how the defendant acted in a way that violated Plaintiff's rights. Plaintiff has not done so here and therefore fails to state any claims against defendants Chapas, Lucero, Marquez, Cruz or Paez.

Plaintiff should be granted leave to file a Fourth Amended Complaint to cure the deficiencies in his claims identified by the Court (see, Stevenson v Holland, 2017 US Dist Lexis 107170)

C.   <u>Official and Individual Capacity</u>

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." <u>Aholelei v. Dept. of Public Safety</u>,

488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted).  However, the Eleventh Amendment does not bar suits for money damages against state officials in their personal capacities, <u>Hafer v. Melo</u>, 502 U.S. 21, 30 (1991); <u>Porter v. Jones</u>, 319 F.3d 483, 491 (9th Cir. 2003); nor does it bar suits against state officials in their official capacity for prospective (injunctive) relief, <u>Wolfson v. Brammer</u>, 616 F.3d 1045, 1065-66 (9th Cir. 2010).  When a plaintiff seeks money damages against a state official and the complaint is silent as to capacity, a personal capacity suit is presumed given the bar against an official capacity suit for money damages.  <u>Shoshone-Bannock Tribes v. Fish & Game Comm'n</u>, 42 F.3d 1278, 1284 (9th Cir. 1994); <u>Price v. Akaka</u>, 928 F.2d 824, 828 (9th Cir. 1991).  Therefore, the court finds that Plaintiff fails to state a claim for damages against Defendants in their official capacities, but he is not barred by the Eleventh Amendment from seeking injunctive or declaratory relief against Defendants in their official capacities, or from seeking money damages from Defendants in their individual capacities.

### D.        RLUIPA & First Amendment Free Exercise  (all Defendants)

In opposition to Defendants' argument pertaining to Plaintiff's RLUIPA claims, Plaintiff again rests on the facts stated in the Third Amended Complaint.

With the exception of defendants Fisher and Moosebaur, the Court finds, for the reasons discussed above, and below regarding defendant Anguiano, that Plaintiff fails to state a claim in the TAC against Defendants Anguiano, Chapas, Lucero, Marquez, Cruz and officer Paez under both RLUIPA and the First Amendment Free Exercise of Religion Clause.  Plaintiff has not demonstrated what each of these individual defendants personally did, or did not do, to violate RLUIPA or the First Amendment Free Exercise Clause.

To begin, in regard to a claim under RLUIPA, RLUIPA does not contemplate liability of government employees in their individual capacity.  <u>Wood</u>, 753 F.3d at 904. Thus Plaintiff may not state a RLUIPA claim for damages against any of the Defendants in their individual capacities.  Moreover, money damages are not available under RLUIPA against the state or state officials sued in their official capacities, <u>Sossamon</u>, 563 U.S. at 279, a RLUIPA claim may proceed only for declaratory or injunctive relief against defendants acting within their official capacities. With this limitation in mind, the Court finds that Plaintiff has stated cognizable

claims under both RLUIPA and First Amendment Free Exercise against Warden Fisher and culinary staff supervisor Moosbauer.

Initially it is important to note that in Plaintiff's TAC he requests as part of his relief, "injunctive relief, to (insure) that Kosher meals are served properly in the future".

In regard to Warden Fisher, the following are applicable to the court's finding: 1) CCR 15 sec 3380(a), which states in pertinent part,  "The warden…of an institution of the department is the chief executive officer of that institution, and is responsible for the custody, treatment, training and discipline of all inmates under his or her charge"; 2) Operational Procedure (OP) 10048 states, "The purpose and objective of this Operational Procedure (OP) is to establish guidelines to supply authorized inmates with a wholesome, nutritious, and adequate Kosher Diet…" (importantly, see Exhibit A attached to  Plaintiff's TAC signed by Warden Fisher). Therefore,  pursuant to CCR 15 sec 3380(a), as a warden it was defendant Fisher's responsibility to ensure that the OP policy was being properly and faithfully adhered to.  These two provisions are more than sufficient to allege a causal connection between Plaintiff's alleged injury and defendant Fisher. ( See Henderson v Ayers, 476 F.Supp 2d 1168 (C.D.Cal. 2007), 2007 U.S. Dist. LEXIS 18791).

In regard to defendant Moosbauer, the following allegations found in Plaintiff's TAC are sufficient to allege a cognizable claim under both RLUIPA and the First Amendment: 1) "Defendant Moosebaur encouraged the prisoners (Food servers) to wear their gloves while urinating and to use those same 'dirty dick' gloves to serve the plaintiff his Kosher meal"; 2) "Defendant Moosebaur also acted with deliberation when he served the plaintiff rotten meat and instructed him to eat it while he (Moosebaur) watched"; 3) "When Defendant Moosebaur told the serving inmates that the plaintiff complained that inmates were stealing items out of the Kosher diets, said defendant intentionally placed the plaintiff in harm's way"; 4) as a culinary supervisor defendant Moosbauer would (likely) be responsible to oversee the actions of members of the culinary staff whose actions are alleged to have involved the following -- "Kosher meals contained food that was rotten, spoiled, and otherwise unfit for human consumption", "Shabbat dinner is served with spoiled meat", "the internal components of the meals are opened, spoiled,

and otherwise contaminated", "the meat is supposed to remain vacuum sealed, but it is served to the plaintiff open and with mold growing on it", "items are constantly being stolen out of the Kosher meals"; and "Kosher meals are often heated in Non-Kosher ovens, rendering them religiously contaminated."

With respect to this last item, number 4) above (Moosbauer), although supervisory government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior, they may be individually liable under section 1983 if there is a causal connection between the supervisor's wrongful conduct and the constitutional violation (see, Pauley v. California, 2018 US Dist Lexis 193388).  This can be shown by demonstrating that a supervisors own culpable action in the control of his subordinates was a cause of Plaintiff's injury (Pauley, supra).  Item 1) above supplies that connection.

In sum, money damages are not available under RLUIPA against the state or state officials sued in their official capacities, Sossamon, 563 U.S. at 279, and RLUIPA does not contemplate liability of government employees in their individual capacity.  Wood, 753 F.3d at 904.  To repeat, Plaintiff may not proceed with a RLUIPA claim against individual defendants for money damages, but he is not precluded from proceeding against them in their official capacities for injunctive relief.  An official-capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent."  Id. (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 690 n. 55 (1978), see Hafer, 502 U.S. 21.))  "Suits against state officials in their official capacity therefore should be treated as suits against the State."  Id. (citing Hafer, 502 U.S. at 25).

Based on the foregoing, Plaintiff fails to state a RLUIPA and First Amendment Free Exercise claim in the Third Amended Complaint against the Defendants Anquiano (see below), Chapas, Lucero, Marquez, Cruz and Paez.  However, Plaintiff does state a claim as to defendants Warden Fisher and culinary staff supervisor Moosbauer.  Plaintiff should be granted leave to file a Fourth Amended Complaint if he so wishes.  (see, Stevenson ,supra).

### E.     Defendant Anguiano – No Claim for Interaction With Kitchen Worker

Plaintiff's allegations that he told Defendant Anguiano that inmate Anderson, a kitchen worker, was bragging about defiling kosher meals and making other offensive comments fails to state any claim against Defendant Anguiano or inmate Anderson.  First, Plaintiff's allegations that inmate Anderson makes offensive comments do not state a claim against the inmate because inmate Anderson is not a defendant in this case.  Second, Plaintiff's allegations that Defendant Anguiano complied with Plaintiff's request to have the inmate worker removed from the serving line do not state any claim against Defendant Anguiano because Anguiano's conduct did not violate Plaintiff's rights, or otherwise contribute to a constitutional violation.  (TAC Exh. B, ECF No. 16 at 27-28.)  Therefore, Plaintiff fails to state any claim in the TAC against Defendant Anguiano.  Plaintiff should be granted leave to amend the TAC if he so wishes.

## F.   **Defendant Moosbauer -- Retaliation**

Defendants move to dismiss Plaintiff's retaliation claim on the ground that oral threats to complain to prison officials and/or threats to file a complaint do not amount to constitutionally protected activity. In support of their argument, Defendants argue that Plaintiff's informal complaints to Defendant Moosbauer do not qualify as a protected activity under the First Amendment.  Defendants cite Johnson v. Carroll, No. 2:08-CV-1494 KJN P, 2012 WL 2069561, at *33 (E.D. Cal. June 7, 2012), for its holding that prisoners have no protected First Amendment right to verbally challenge correctional staff.  In Johnson, the plaintiff contended that his "verbal complaints and challenges to the excessive and harassing strip searches performed by Officer Johnson was protected speech" and, therefore, that defendants' immediate responses thereafter are actionable under a First Amendment retaliation claim.  Id.  The Court found that plaintiff's statements to defendant Johnson, incident to the subject search, were not protected speech, and that the plaintiff failed to state a First Amendment retaliation claim based on the conduct that allegedly occurred immediately after the search.  Id. at 34.

However, the Court finds Defendants' reliance on this decision unpersuasive.  The Johnson decision was followed by the Ninth Circuit's decision in Entler v. Gregoire, 872 F.3d 1031 (9th Cir. Oct. 6, 2017), holding that both "verbal . . .[and] written . . .threats to sue fall within the purview of the constitutionally protected right to file grievances."  Id. at 1039-40.  The

Court clarified that its holding was not expressly limited to threats to file a lawsuit.  Instead, because of the exhaustion requirement inherent in any prison lawsuit, the threat to file a grievance is implicitly a threat to sue.  Id.

Entler held that there is "no material distinction between retaliation in the Title VII context and prisoner retaliation," and Ninth Circuit jurisprudence has long held that "making an informal complaint to a supervisor is a protected activity under Title VII anti-retaliation provision."  Ray v. Henderson, 217 F.3d 1234 (9th Cir. 2000) (citing Equal Employment Opportunity Commission v. Hacienda Hotel, 881 F.2d 1504, 1514 (9th Cir. 1989)); see also Jones, 791 F.3d at 1035-36 ("Jones' verbal complaints of discrimination to the Penitentiary's Food Services Manager and statements on intention to file suit were conduct protected by the First Amendment."); Halloum v. Ryan, 2014 WL 1047144, *5 (D. Ariz. 2014).  ("[A] number of courts have concluded that verbal statements made by an inmate that essentially constitute a grievance, or that indicate an intent to file a formal written grievance, are protected by the First Amendment.")  Loftis v. Montes, No. 218CV4769JFWGJS, 2020 WL 1290842, at *3–4 (C.D. Cal. Feb. 11, 2020), report and recommendation adopted, No. 218CV4769JFWGJS, 2020 WL 1289170 (C.D. Cal. Mar. 18, 2020)

Courts have found protected activity where an informal complaint was submitted as a verbal complaint to a superior.  See Gathrite v. Wilson, No. 3:19-cv-01852-JAH-NLS, 2020 WL 4201668 (S.D. Cal. July 22, 2020); see also Ahmed v. Ringler, No. 2:13-CV-1050 MCE DAD, 2015 WL 502855, at *4 (E.D. Cal. Feb. 5, 2015) (finding inmate's verbal complaints about improper search of cell and seizure of his property to superior constituted protected conduct); see also Hackworth v. Torres, No. 1:06-cv-773 RC, 2011 WL 1811035, at *1 (E.D. Cal. May 12, 2011) (rejecting defendant's argument that prisoner's verbal objections to a prison policy during housing classification committee meeting with prison staff was not protected by the First Amendment because the inmate had not filed a written grievance); see also Leslie v. Claborne, 1:19-cv-00366-NONE-GSA-PC, 2021 WL 4523720, at *4 (E.D. Cal. Oct. 4, 2021) (finding plaintiff's reporting of officer misconduct to a captain was protected); see also Uribe v. McKesson, No. 08-cv-1285 DMS (NLS), 2011 WL 9640, at *12 (prisoner's attempt to report a

prison official's misconduct, either "verbally or in writing, constitutes speech or conduct entitled to First Amendment protection.").

Here, the court finds that Plaintiff states a cognizable claim for retaliation against Defendant Moosbauer.  Accepting the TAC's allegations as true, and construing them in Plaintiff's favor, the TAC sufficiently states a claim that Defendant Moosbauer's conduct violated Plaintiff's constitutional right to be free from retaliation under the First Amendment. Plaintiff's verbal complaint to Moosbauer about the condition of the Kosher foods being served constitutes a protected action under the First Amendment, and after Plaintiff complained, Defendant Moosbauer allegedly acted adversely against Plaintiff by informing inmates of plaintiff's complaints which caused Plaintiff to be viewed as a snitch among those prisoners who served the food,  and encouraged the prisoners to contaminate the food served to him.  (ECF No. 17 at 11.)

**G.      Failure to Protect – Defendants Fisher and Moosbauer**

As discussed above, the Eighth Amendment requires prisoners to be provided with nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it.  To be liable for failure to protect a prisoner from a risk off serious harm, a defendant must know about the risk and deliberately disregard it.  In addition, the defendant must be someone who has the authority and responsibility to protect the prisoner.

Here, the court finds that Plaintiff states cognizable claims against Defendants Fisher and Moosbauer for their failure to protect Plaintiff from a risk of serious harm from unsanitary Kosher foods.  Both defendants are supervisors with the authority and responsibility to protect Plaintiff.

As discussed above regarding Warden Fisher's culpability for violations of RLUIPA and the First Amendment Free Exercise Clause: 1) CCR 15 sec 3380(a) states in pertinent part,  "The warden…of an institution of the department is the chief executive officer of that institution, and is responsible for the custody, treatment, training and discipline of all inmates under his or her charge"; and, 2) Operational Procedure (OP) 10048 states, "The purpose and objective of this Operational Procedure (OP) is to establish guidelines to supply authorized inmates with a

wholesome, nutritious, and adequate Kosher Diet…"  Plaintiff's Exhibit A attached to the TAC shows that the OP was signed by Warden Fisher, making Fisher culpable for his failure to oversee culinary staff who allegedly provided unsanitary Kosher foods to Plaintiff.

The same is also true for Defendant Moosbauer who,  as a supervisor, is responsible to oversee the actions of members of the culinary staff alleged by Plaintiff to be involved in the following-- "Kosher meals contained food that was rotten, spoiled, and otherwise unfit for human consumption", "Shabbat dinner is served with spoiled meat", "the internal components of the meals are opened, spoiled, and otherwise contaminated", "the meat is supposed to remain vacuum sealed, but it is served to the plaintiff open and with mold growing on it."  Importantly, Operational Procedure 10048, Sec IV. E states, "The Correctional Supervising Cooks (CSC) are directly responsible for the proper preparation, quality and quantity of kosher meals and the service of the meals….".   This makes clear defendant Moosbauer's responsibility to protect Plaintiff.

Therefore, the Court finds that Plaintiff states claims against Defendants Fisher and Moosbauer for failure to protect Plaintiff from risk of harm from unsanitary foods, in violation of the Eighth Amendment.

**H.     Conditions of Confinement (all Defendants)**

A prisoner's conditions of confinement claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi, 391 F.3d at 1057 (quoting Hallett, 296 F.3d at 744 (citation omitted)). Extreme deprivations are required to make out a conditions of confinement claim. Hudson, 503 U.S. at 9 (citations and quotations omitted). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson, 217 F.3d at 731. "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Id. at 731.

Plaintiff alleges that he became ill and vomited when he ate meat that was supposed to be vacuum sealed but was served to him open and with mold growing on it. Plaintiff also alleges that sharp and relatively large bone shards in turkey served in Kosher lunches caused damage to Plaintiff's teeth and lacerations in Plaintiff's mouth and throat.

If Kosher foods dangerous to Plaintiff's health were only served rarely, without Defendants' knowledge, Plaintiff's allegations in the TAC would not rise to the level of an Eighth Amendment claim. But here, Plaintiff alleges that Defendants knowingly failed and even refused to adhere to proper procedures from approximately January 8, 2019, until Plaintiff filed the TAC on January 7, 2020. Plaintiff alleges that "[f]rom January 8, 2019 until the present date, the Kosher meals contained food that was rotten, spoiled, and otherwise unfit for human consumption."

However, as addressed in part above, Plaintiff fails to state a conditions of confinement claim in the TAC because he has not alleged sufficient specific **facts, other than by broad conclusions,** that connect an individually named defendant(s) personal conduct, lasting over a sufficient period of time, to a conditions of confinement violation. To just state that from January 8, 2019 to the present date kosher meals were rotten, etc, is insufficient.    To state a claim, Plaintiff must **name** a Defendant and **explain** what that **individual** Defendant did, or did not do to cause a violation of his constitutional rights, along with the frequency and duration of the occurrence. Plaintiff must allege facts explaining what Plaintiff saw, heard, or otherwise experienced, demonstrating that the individual Defendant knew about the unhealthy condition of the food and yet ignored a risk to Plaintiff's health, or otherwise responded unreasonably. Conclusory allegations are not sufficient to state a claim.

Plaintiff should be granted leave to file a Fourth Amended Complaint, to cure the deficiencies in this claim. (see, Stevenson, supra).

## VI.    CONCLUSION and RECOMMENDATIONS

Based on the foregoing, the Court finds that Plaintiff states claims in the Third Amended Complaint for retaliation against Defendant Moosbauer, claims for violations of RLUIPA and First Amendment Free Exercise Clause, and Failure to Protect against Defendants Fisher and

Moosbauer, but no other claims against any of the Defendants upon which relief may be granted. Plaintiff should be required to either: (1) notify the Court that he wishes to proceed only with his retaliation claim against Defendant Moosbauer,  RLUIPA and First Amendment Free Exercise and Failure to Protect claims against Defendants Fisher and Moosbauer, and dismiss all other claims and defendants, or (2) file a Fourth Amended Complaint.

Accordingly, **IT IS HEREBY RECOMMENDED** that:

1.      Defendants' Rule 12(b)(6) motion to dismiss, filed on November 12, 2021, be granted in part, with leave to amend; and

2.      Plaintiff  be required to either: (1) notify the Court that he wishes to proceed only with his retaliation claim against Defendant Moosbauer, claims for violations of RLUIPA and First Amendment Free Exercise Clause, and Failure to Protect against Defendants Fisher and Moosbauer, and dismiss all other claims and defendants, or (2) file a Fourth Amended Complaint; and

3.      This case be referred back to the Magistrate Judge.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**August 25, 2022**__           _____**/s/ Gary S. Austin**
                                                                UNITED STATES MAGISTRATE JUDGE